IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BARBARA J. DUKE, Executrix of )<br>The Estate of Thelma Edgar, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>ATRIA, INC., )<br>)<br>  Defendant. ) | 2:03-CV-00934-DRB<br>[WO] |

**MEMORANDUM OPINION  and
ORDERS ON RULE 104 MOTIONS**

Following careful consideration of the briefs, applicable law, expert testimony and exhibits admitted prior to and during the evidentiary hearing, the Court concludes that Defendant *Atria Inc.'s Motion Under Rule 104 of the Federal Rules of Evidence* **(Doc.58,** March 30, 2005), *and Plaintiff's Motion Under Rule 104- Motion in Limine, Federal Rules of Evidence* **(Doc.66**, April 6, 2005)[1] should each be granted in part and denied in part.

**I.**

**BACKGROUND**

  A.  **THE LAWSUIT**

Plaintiff Barbara J. Duke ("Duke"), as Executrix of the Estate of Thelma Edgar ("Edgar"), sues Atria, Inc. ("Atria") for negligence, wantonness, breach of contract, fraud and fraudulent

---

[1]Notwithstanding the dually captioned reference, Duke's *Motion* addresses only the qualifications of Atria's expert under the substantive state law which governs this liability action and under the federal evidentiary rules. Accordingly, the Court declines to treat it as a *motion in limine*.  Filed concurrently are rulings on Defendant Atria's motions to strike purportedly inadmissible evidence proffered by Duke on each Rule 104 motion.

deceit, arising from Edgar's physical injuries suffered on September 3, 2002, as a resident of Atria's Halcyon Assisted Living Facility. Edgar died on October 15, 2003, approximately a month following the removal of this diversity action from the Montgomery County Circuit Court.[2] Duke characterizes her lawsuit as "a simple 'slip and fall' case" arising "when [Edgar] slipped and fell in the bathroom of her suite and struck her head and chest on the bathroom floor."[3] Disputed is Duke's claimed entitlement to damages for medical expenses, mental anguish, physical pain and suffering, and punitive damages.

Duke's complaint presents, in substance, a malpractice action governed by the Alabama Medical Liability Act, Ala. Code §§6-5-481 et seq. and 6-5-550 et seq. ("AMLA").[4] Though the parties could not agree on a proposed pretrial order, they agree, *first,* that the AMLA governs all liability claims asserted, and *second,* that, for purposes of the AMLA, Atria's assisted living facility can be deemed a "hospital."

---

[2] Suggestion of Death, *Duke Aff.* ¶ 2 (Doc.11, Nov. 24, 2003).

[3] *Plaintiff's Objection to Magistrate's Order* at 3, ¶ 8 (Doc. 24, April 23, 2004). In opposition to Atria's Rule 104 Motion, Duke submits: "Regardless of how Atria now wants to characterize this case, it remains a medial malpractice case involving a hospital and its failure to properly and adequately provide health care services to a resident, which resulted in a fall and a head injury, cracked ribs, a dislocated shoulder prosthesis, a seizure, and long term emotional trauma and pain to Mrs. Edgar." *Pl.'s Resp.* (Doc. 70) at 3-4.

[4] *Order* filed December 1, 2004 at 4-5 (Doc.50).

2

### B. *THE FED. R. EVID.* **104**[5] **MOTIONS**

Duke cannot succeed on her AMLA liability claims without establishing by expert testimony both the standard of care owed by Atria to Edgar and a breach of that standard proximately resulting in the physical injuries claimed.[6] Atria contends in its Rule 104 motion that testimony by Duke's "standard-of-care" expert, Theresa Bowyer, R.N. ("Bowyer"), "should be disregarded in its entirety based upon both: (a) federal law and rules concerning expert testimony - Rule 702 of the Federal Rules of Evidence and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 119 S.Ct. 1167 (1999); and (b) the requirements of the Alabama Medical Liability Act regarding experts – Code of Alabama § 6-5-548(a) (1975)." (*Def.'s Mot*. at 2; case citations omitted). Atria correctly states that "[e]xclusion under either of these grounds is fatal to plaintiff's claims." *Id*. at 3.

Duke's Rule 104 motion contends that Atria's "standard-of-care" expert, Diana Bailey ("Bailey"), "is not qualified to testify .... regarding what classifies a patient 'at risk' for falling and what are the proper precautions, and procedures to follow when caring for a patient 'at risk' for falling. Both questions must be answered by experts in the field of nursing care." (*Pl.'s. Mot*. at 1). Duke pinpoints Bailey's failure to satisfy the requirements of § 6-5-548 (2) and (3) of the AMLA, "that the health-care expert is trained and experienced in the same discipline or school of practice

---

[5]Challenges to the admissibility of expert testimony must be decided preliminarily pursuant to Rule 104(a), which provides:
> *Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.*

[6]*See* Part II-A, *infra*.

and have practiced in the same discipline as the health-care-provider defendant 'during the year preceding the date that the alleged breach of standard of care occurred." (*Pl.'s Mot*. at 1, 12; case citations omitted).

## II.
### STANDARD OF REVIEW:   ADMISSION OF EXPERT TESTIMONY

"Proffered expert medical testimony must meet the legal as well as the substantive issues of the case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999) (citation omitted). Fed.R.Evid. 601 mandates that "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."  Accordingly, before discussing Atria's and Duke's motions to disqualify their respective experts, the Court summarizes the standards of review supplied by the Alabama Medical Liability Act, Federal Rules of Evidence 104 and 702, and pertinent caselaw.

### A.     ALABAMA MEDICAL LIABILITY ACT

AMLA mandates expert testimony to establish the requisite standard of care.[7]  "To establish breach of the applicable standard of care, the plaintiff in a medical malpractice action must generally produce expert medical testimony establishing the appropriate standard of care, the health care provider's deviation from that standard, and a causal connection between the breach of the standard

---

[7] Ala. Code §6-5-548(a) provides:   In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

and plaintiff's injury." *Watson v. Aldrete,* No. 02-T-137-S, 2002 U.S. Dist. LEXIS 25778, *8 (M.D. Ala. Aug. 23, 2002); *see Chapman v. Smith*, 893 So. 2d 293 (Ala. 2004); *Vaughn v. Oliver*, 822 So. 2d 1163, 1168 (Ala. 2001) ("In medical-malpractice cases, the plaintiff must prove the alleged negligence through expert testimony, unless an understanding of the alleged lack of due care or skill requires only common knowledge or experience.").

In deciding whether an expert is qualified to testify in an AMLA action, this Court must be guided by the Alabama Supreme Court's instructions to make three determinations: (1) the standard of care the plaintiff says the defendant breached; (2) whether the defendant who is alleged to have breached the standard of care is a specialist in the area of care in which the breach is alleged to have occurred; and (3) whether the expert qualifies under the criteria set out in the statute. *Husby v. So. Ala. Nursing Home,* 712 So.2d 750, 753 (Ala. 1998), *citing Medlin v. Crosby*, 583 So.2d 1290 (Ala. 1991).

### B.   FEDERAL RULES OF EVIDENCE 104 AND 702

#### 1.  *Burden of Proof*

The "preponderance of the evidence" standard governs the determination of all Rule 104(a) issues. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 n.10 (1993). The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F. 3d 1300, 1306 (11th Cir. 1999). "The proponent of expert testimony carries a substantial burden under Rule 702." *Cook ex rel. Tessier v. Sheriff of Monroe County, Florida*, 402 F. 3d 1092, 1107 (11th Cir. 2005).

## 2. *Daubert reviews*

If the proffered expert is deemed competent under the AMLA, the court must still screen that expert's testimony for admissibility under Rule 702.[8] The state law "is directed at establishing a substantive issue in the case" while the gatekeeping structure of Rule 702 is "designed to ensure fair administration of the case." *McDowell v. Brown*, 392 F.3d 1283, 1295 (11th Cir. 2004), *citing Legg v. Chophra*, 286 F. 3d 286, 292 (6th Cir. 2002).

This "gatekeeping" function "inherently require[s] the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards of admissibility under Rule 702." *United States v. Frazier*, 387 F. 3d 1244, 1260 (11th Cir. 2004) (*en banc*). The objective is the admission of only expert evidence which is "relevant to the task at hand" and grounded "on a reliable foundation." *Daubert,* 509 U.S. at 597. Thus, the court's screening must "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F. 3d 1286, 1291 (11th Cir. 2005). In pursuit of this desired objective, the trial court is obliged to conduct a "rigorous three-part inquiry:"

> (1) whether the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) whether the methodology by which the expert reaches his conclusions is sufficiently

---

[8]Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

reliable as determined by the sort of inquiry mandated in *Daubert*;[9] and

(3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Cook ex rel. Tessier,* 402 F. 3d at 1107 (internal citations and quotations omitted); *see also Frazier*, 387 F. 3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert witness..."); *McCorvey v. Baxter Healthcare Corp.*, 298 F. 3d 1253, 1257 (11th Cir. 2002).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. Thus, a trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." *Cook ex rel. Tessier*, 402 F. 3d at 1111.

## III.

## ANALYSIS: ATRIA'S RULE 104 MOTION (Doc. 58)

### A. CONTENTIONS

Supported principally by Bowyer's deposition testimony on January 18, 2005, Atria challenges the competence of Plaintiff's expert by reference to her alleged lack of experience and

---

[9]*Daubert*, 509 U.S. at 593-94, identifies four non-inclusive factors for the court's consideration as warranted by the particular case: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 152 (1999).

knowledge in the field of her proposed testimony – assisted living facilities– and her reliance on rules and regulations "downloaded from the internet" which relate to Level II "specialty care" assisted living facilities.[10] It is undisputed that Edgar resided in Defendant's Level I (standard or regular) assisted living facility[11] and that the state of Alabama licenses and regulates Level I and Level II facilities separately.

Duke maintains that "[t]he field of practice of [her expert's] proposed testimony is not the administration of an assisted living facility, it is the delivery of health care services to Mrs. Thelma Edgar." Because Atria's assisted living facility "primarily. . provided non-skilled nursing services in the form of long term care assistance with ADL", Duke contends:

> The evidence in this case requires an expert who is trained in providing health care services to residents (patients) in a hospital. The particular type of care being provided by that hospital, an assisted living facility, was nursing care and care assistance with activities of daily living to elderly residents residing in a facility that provided long term care to its residents. That type of care can only be provided by a health care provider, such as a licensed nurse or a care assistant or nursing assistant working under the supervision of a licensed nurse.[12]

Duke identifies Lula Woods, Atria's former employee variously referenced as a "care assistant" or a "certified nurse assistant" as the culpable "health care provider" in this liability claim and contends that her expert is a "similarly situated health care provider" within the meaning of Ala. Code § 6-5-548(b) because, in essence, she has " hands on" experience in geriatric nursing in a nursing home

---

[10] *Def.'s Mot.* at 3-12 and evidentiary submission (Doc. 59).

[11] *Duke Dep.* at 91; *McCord Robinson Dep.* at 141, 148-151 (Doc. 59).

[12] *Pl.'s Resp.* at 4.

setting.[13]

## B. DISCUSSION

### 1. AMLA "competency"

Applying the stated standards for assessing Bowyer's qualifications as Duke's expert, the Court addresses first her competency under the controlling substantive law. Initially to be determined is the "standard of care" at issue in this AMLA action. Atria contends that in Paragraph 32 of the complaint, Duke only identifies *negligent hiring, supervision, and training* as the basis for liability. Duke insists that her complaint puts into controversy culpable acts and omissions involving hands- on nursing care which incorporates assistance with activities of daily living ("ADL"), fall prevention and procedure; admissions assessments and continuing assessments for suitability for residency in long term care facility; staffing and training.[14] After careful scrutiny of the entire complaint – especially the cited Paragraph 32 which incorporates expressly all preceding paragraphs of the Complaint – the Court finds its sufficient to implicate two standards of care: (1) hands-on, non-skilled nursing care, and (2)hiring, supervision, training and staffing.

Next to be determined is whether the defendant blamed for breaching the standard of care is a specialist in the area of care represented by the breach. For this inquiry, the parties do agree that for a corporate defendant like Atria, the proper focus is on the individual whose specific action allegedly fell below the standard of care, and, accordingly, the expert witness must be similarly

---

[13]*See Pl.'s Resp*. at 7-10.

[14]In response to the Court's inquiry at the evidentiary hearing, Duke's counsel specified these categories of culpable acts and omissions.

9

situated to that individual. See *Husby,* 712 So.2d at 753. The individual employee whose hands-on nursing care is questioned is Lula Woods, the caregiver who assisted the decedent with bathing and dressing at the time of her fall. It is undisputed that Woods is a a non-specialist, thereby requiring Duke's expert to be a "similarly situated health care provider" within the meaning of Ala. Code §6-5-548(b).

Concerning the standard of care triggered by allegations of Atria's negligence in hiring, supervision, training, staffing, and admissions assessments, the evidentiary record does not attribute to Woods any responsibility in these areas. Identified instead are Daria McCord Robinson, LPN and Resident Service Director, for some staffing responsibility, and Beth Donaghue, the facility's Administrator, for her involvement with the decedent's pre-admission assessment and admission.[15] Because the evidence fails to posit either individual as a specialist, § 6-5-548 (b) still applies to determine whether pertinent testimony by Duke's expert should be admitted.

The statute requires a "similarly situated health care provider" who is a non-specialist to (1) "[be] licensed by the appropriate regulatory board or agency of this or some other state; (2) [be] trained and experienced in the same discipline or school of practice; and (3) [have] practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.." Bowyer, duly licensed as a nurse in Alabama, also is trained and experienced in the same discipline as Woods. A registered nurse, her experience for the past twenty years or so includes 8 years as a head nurse in an acute care setting followed by over 10 years as the Director of Nursing at Lafayette Nursing Home, a long term care facility where she

---

[15] *See McCord Robinson Dep.* at 148 (*Def.'s Ex.* 5 submitted in Doc. 59). Moreover, the administrator of an assisted living facility in Alabama is responsible for personnel training, staffing, and supervision, and for the facility's overall operation. Ala. Admin. Code r. 420-5-4-.04 (2004).

assisted patients with activities of daily living and delivered other hands-on care. Bowyer practiced in the field of nursing in a long term care facility during the year preceding the incident in controversy[16] Notwithstanding the parties' dispute on whether the statute mandates that Bowyer's nursing experience be specifically in an assisted living facility, each party's expert testified that the non-skilled hands-on nursing care rendered by Woods at Atria's assisted living facility is the same type of care that she or a similarly situated health care provider would render in a nursing home or any other type of long-term care facility. In sum, Duke has provided sufficient evidence that Bowyer is a similarly situated health care provider capable of rendering expert opinions as to the hands on care provided by Lula Woods.

As the only expert proffered by Duke, Bowyer must be compared next to the Atria staff implicated in liability allegations unrelated to hands-on care. Bowyer offers critical opinions of Administrator Donaghue's final decision to admit Edgar to the facility, describing it as the most egregious violation of the standard of care. Bowyer holds an inactive license as a nursing home administrator in the State of Georgia. Assuming *arguendo* sufficient comparability in the licensing process for nursing home administrators and assisted-living facility administrators, Duke fails to establish the requisite practice by Bowyer in this field – i.e., as an administrator – for one year preceding Edgar's pre-admission assessments.[17] Bowyer is not, therefore, similarly situated to an administrator responsible for pre-admission assessment evaluations and final decisions, and

---

[16]*See Resume of Bowyer* (Ex. 1 attached to *Bowyer Aff.*, Doc. 71) and *Bowyer Aff.* at 1-3, *Pl.'s Ex. 5*).

[17]Though Bowyer did secure in 1996 an emergency nursing home administrator's license for a duration of six months (*Bowyer Aff.* at 1, *Pl.'s Ex. 5; Bowyer Dep.* at 24, *Def.'s Ex. 3* ), she did not engage in practice pursuant to this emergency license in the year preceding the acts underlying this lawsuit. Moreover, Duke has not shown that pre-admission evaluations and final determinations are equivalent in both nursing home settings and assisted living facility settings.

accordingly, she cannot render expert opinions regarding the standard of care governing acts or omissions by such an administrator.

Both Administrator Donaghue and LPN Robinson assumed responsibilities for staffing and direct supervision of non-skilled caregivers, including Woods. In contrast to the comparison between Donaghue and Bowyer, the record does support a finding that Bowyer is a similarly situated health care provider to Robinson. During her tenure as the Director of Nursing at Lafayette Nursing Home, and during the preceding year of the alleged incident, Bowyer acquired experience in hiring, training, supervising and staffing of professional, skilled nurses as well as non-skilled caregivers and certified nursing assistants.[18]

### 2. *Rule 702/ Daubert* analysis

Seeking to exclude Bowyer's expert testimony for lack of reliability under Rule 702, Atria highlights her admission that she has never practiced in the assisted-living field and argues that she is neither familiarized sufficiently with the applicable rules and regulations nor experienced adequately with the standard of care which apply generally or specifically under Atria's various levels of care. Duke responds by emphasizing her expert's experience and knowledge in long-term nursing care.

Already determined is Bowyer's competence to provide expert testimony concerning hands-on nursing care and, to a more limited extent, the hiring, training, supervision and staffing of caregivers for basic nursing care in a long-term care facility. Placed in dispute is whether Atria breached any applicable standard of care. Because Alabama requires expert testimony on the

---

[18]Bowyer provided testimony at the evidentiary hearing consistent with her affidavit in this regard. (*Bowyer Aff.* at 2, *Pl.'s Ex. 5* ).

standard of care and any alleged breach, any reliable testimony by Bowyer on these issues will assist the jury in deciding the controverted facts underlying the asserted liabilities. Thus, the only remaining question for this *Daubert* analysis is whether the methodology by which Bowyer reaches her conclusions is sufficiently reliable.

Atria attacks Bowyer's conclusions in significant part because she admittedly downloaded from the internet and referenced in both deposition testimony and her preliminary report the state regulatory provisions which govern "speciality care" assisted living facilities. At the evidentiary hearing, however, Bowyer maintained that the relevant portions used to form her opinions differ in no material respect from the regulations applicable to the "standard" assisted living facility in which Edgar resided.  Moreover,  that Bowyer did not rely solely on the challenged regulations is evidenced by scrutiny of her preliminary report and consideration of her testimony at the hearing; helping to inform her expert opinions about the care rendered by Woods were Bowyer's professional experience, education and training and her review of relevant training guides and manuals, deposition transcripts, and admissible discovery records.

In the considered judgment of this Court, Atria's expressed concerns about the reliability of Bowyer's testimony are targeted more appropriately to the weight and credibility it should be accorded. Bowyer's relevant opinions are not so rife with clearly demonstrated and indisputably evident deficiencies in reliability and relevance that they should be inadmissible.  "[T]he weaknesses in the underpinnings of the expert's opinions go to its weight rather than its admissibility." *Jones v. Otis Elevator Co.*, 861 F. 2d 655, 663 (11th Cir. 1988).  In fulfilling its Rule 702 "obligation to screen expert testimony to ensure it stems from, not just a reliable methodology, but also a sufficient factual basis and reliable application of the methodology to the facts, [t]he trial

13

judge, however, must still avoid usurping the role of the trier of fact." *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283, 1285 (M.D. Ala. 2001). As explained succinctly in *Rudd v. General Motors Corp.*, 127 F. Supp. 2d 1330, 1337 (11th Cir. 2001):

> The revised rule is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other...The rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a sea change over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

(quoting Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendment); *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK LTD.*, 326 F. 3d 1333, 1341 (11th Cir. 2003)("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence.").

### C. CONCLUSION

Pursuant to the foregoing discussion, it is

***ORDERED that Defendant Atria's Motion Under Rule 104 of the Federal Rules of Evidence*** (Doc.58, March 30, 2005) is **DENIED** to the extent that it seeks to exclude in its entirety all testimony by Duke's expert, Theresa Bowyer, R.N. The *Motion* is **GRANTED** to the extent that Bowyer's expert opinions shall be limited to testimony regarding (a) hands-on, non-skilled nursing care rendered to the decedent by Lula Woods, and (b) hiring, training, supervision, training and staffing rendered by Daria McCord Robinson, LPN.

### IV.

## ANALYSIS:  DUKE'S RULE 104 MOTION   (Doc.66)

### A.   DISCUSSION

Duke challenges the *AMLA* qualifications of Atria's expert witness, Diana Bailey ("Bailey") to testify regarding the classification of, and proper care for, patients 'at risk' for falling. Guided by the same § 6-5-548(b) requirements discussed in assessing Duke's expert as a similarly situated, non-specialist health care provider, the Court incorporates here the discussion at Section III-B of the two standards of care presented by Duke's liability allegations and examines initially the "hands-on, non-skilled nursing care" standard used to evaluate the negligence attributed to Woods' care of the decedent.

Duke's *Motion* does not challenge the first statutory prerequisite – that Bailey be "licensed by the appropriate regulatory board or agency" – but instead contends that Bailey lacks both the requirements for training and experience and for prior practice for the requisite time "in the same discipline or school of practice" as Woods. Conceding that "Alabama law does not demand the expert have practiced in exactly the same type of facility as the defendant," Duke argues that the evidence establishes that:

> Ms. Bailey is not a registered nurse, a licensed practical nurse, a certified nursing assistant, nor a CNA care assistant trained in [providing assistance] with activities of daily living to the elderly in a similarly situated facility. There is nothing contained in Ms. Bailey's affidavit in which she lists her qualifications that indicates that Ms. Bailey was anything other than a Marketing Director prior to August 2002 and then from August 2002 an Administrator in an assisted living facility. In fact, during August 2002 and September 2002, Ms. Bailey was not practicing as a licensed administrator of an assisted living facility.[19]

Atria concedes the stated scope of its expert's experience but argues that her selection

---

[19] *Pl.'s Mot*. (Doc.66) at 7.

reflected Duke's "lack of criticism" through her expert "of the only person who provided the actual hands on care" to the decedent:

> In the face of these glaring inadequacies as to her qualifications in assisted living, genuine proof of unreliability in downloading the wrong regulations, and lack of criticism of the only person who provided the actual hands on care to Thelma Edgar, the need for any expert testimony at all by defendant was marginal and certainly open to question.  Defendant, however, erred on the side of caution by designating an expert who had experience with the regulations referred to by plaintiff's expert and wh had experience in assisted living as an administrator.  There was definitely no need for any expert as to the care offered by Lula Woods at the time, however, in light of plaintiff's expert's testimony that she had no criticisms of Lula Woods' conduct on the occasion in question.
> Had plaintiff's expert in fact offered criticisms of Atria's employee, Lula Woods, defendant would have proffered an expert on this issue, but plaintiff's expert did not.[20]

Having decided adversely to Atria its contention that Duke's expert is incompetent to testify about Woods' hands-on care to the decedent (see discussion at Section III-B and III-C), the Court accepts Atria's admission that its own expert does not meet the statutorily required training, experience, and practice to qualify her to testify.[21]

Bailey is clearly competent, however, to provide expert testimony regarding the standard of care underlying Duke's allegations of liability arising from Atria's admission assessments and staffing issues.  Evidence is undisputed that Bailey is a licensed administrator, has experience as an administrator and actually practiced as an administrator in an assisted living facility the year preceding the alleged incident.  Like Atria's facility administrator Donaghue, Bailey has had training,

---

[20]*Def.'s Resp.* (Doc.75) at 8.

[21]Bailey's testimony at the evidentiary hearing is consistent.  While she provided some assistance to patients during the process of obtaining her administrator's license, she did not claim either training and experience in hands-on nursing care or such specialized practice in the year preceding the September 2002 incident.

experience, and practice in hiring, training, staffing and the overall administrative operation of an assisted care facility.  Though not charged like Atria's LPN Robinson with direct supervision of caregivers and nursing assistants,   Bailey oversees those performing the direct evaluations and possesses the requisite training to perform this duty.

The Court thus finds Bailey competent under the AMLA[22] to testify as a similarly situated health care provider on the asserted liability claims which are unrelated to hands-on nursing care. Accordingly, Duke's Rule 104 Motion will be granted only to the extent of precluding Bailey from offering expert opinions on the hands-on nursing care provided by Woods to the decedent.

### B.   CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED** that ***Plaintiff Duke's  Motion Under Rule 104*** (Doc.66, April 6, 2005) is **DENIED** to the extent  that it seeks to exclude in its entirety all testimony by Atria's expert, Diana Bailey; said expert shall be allowed to testify regarding the standard of care relating to the facility's admission assessments and decisions as well as hiring, training, staffing, training, and supervision issues.  The *Motion* is **GRANTED** to the extent that it seeks to exclude expert opinions by Atria's expert, Diana Bailey, regarding the hands-on nursing care provided by Lula Woods.

———————

Done this 27th  day of June, 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE

---

[22]Duke also cites to Rule 702 and *Daubert* but advances no supporting analysis or arguments. In accordance with its gatekeeping function, the Court has evaluated Bailey's admissible opinions for relevance and reliability. No deficiency precludes admission on these grounds.